IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                            No. CR 13-2743 RB

CYLESTE GABALDON,

      Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Evidence, filed September 12, 2013. (Doc. 19). Defendant is charged with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant moves to suppress the evidence obtained as a result of a traffic stop on the ground that the totality of the circumstances did not justify the stop. (Doc. 19). The United States responds that the officers had reasonable suspicion to stop Defendant's vehicle. (Doc. 20). Having carefully considered the submissions of counsel and the evidence adduced at the October 7, 2013 hearing, and being otherwise fully advised, the Court **DENIES** Defendant's motion.

### FINDINGS OF FACT

Federal Rule of Criminal Procedure 12(d) provides that when factual issues are involved in deciding a motion, the Court must state its essential findings on the record. FED. R. CRIM. P 12(d). The Court makes the following factual findings based on the evidence adduced at the evidentiary hearing, including the testimony from Chavez County Deputy Sherriff Keith Rightsell and Roswell City Police Detective Kim Northcutt. The Court's citations to the

transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page numbers.

At the time of the incident, Deputy Rightsell was employed as a detective by the City of Roswell Police Department and assigned to the criminal investigations division. (Tr. at 2-3). Detective Northcutt is employed by the City of Roswell Police Department and he has been assigned to the criminal investigations division at all relevant times. (Tr. at 38-39). Each officer has over a decade of law enforcement experience. (Tr. at 3; 38). Deputy Rightsell and Officer Northcutt have dealt with Defendant and her extended family over the years. (Tr. at 29).

On February 27, 2012, a shooting occurred at Farley's restaurant in Roswell, New Mexico. (Tr. at 4). Responding officers identified Kaprice Gabaldon,[1] and others as suspects in the shooting. (*Id.*) Search warrants were obtained for 1405 E. Hendricks Street, 1419 E. Hendricks Street, and 1421 E. Hendricks Street, all located in Roswell. (Tr. at 4; Govt. Exhibit 1). Deputy Rightsell and Detective Northcutt knew that Kaprice Gabaldon and her family and friends lived at these addresses. (Tr. at 29). During the course of the search, police officers apprehended a male suspect hiding in a doghouse located in a backyard of one of the subject residences. (Tr. at 5).

At approximately 3:00 a.m. on February 28, 2012, after executing the search warrant at 1421 E. Hendricks Street, Deputy Rightsell, Detective Northcutt, and four to six other officers were in the driveway area preparing to leave the residence. (Tr. at 6, 42). At that point, the officers observed a vehicle traveling at approximately 45 miles per hour northbound on Hinkle Street coming from E. Bland Street. (Tr. at 6, 42; Govt. Exhibit 5). The speed limit on that section of Hinkle Street is 30 miles per hour. (Tr. at 42). A school is located on the east side of

---

[1] Defendant refers to Kandace Gabaldon in his motion, but the criminal complaint and the government's response refer to Kaprice Gabaldon.

2

Hinkle Street, and a school zone is located immediately south of the intersection of Hinkle Street and E. Hendricks Street. (Govt. Exhibit 8). Hinkle Street has a double yellow line down the center at its intersection with E. Hendricks Street. (Govt. Exhibits 7 & 8). The intersection of Hinkle Street and E. Hendricks Street forms a T intersection. (Tr. at 8; Govt. Exhibit 5). The residence at 1421 E. Hendricks Street is located on the northwest corner of Hinkle Street and E. Hendricks Street. (Govt. Exhibit 5).

As the vehicle approached 1421 E. Hendricks Street, the group of six to eight police officers stood scattered in the driveway area of 1421 E. Hendricks Street. (Tr. at 6-7). The officers wore black vests with the word "police" prominently displayed across the front and back of the vests in large white letters. (Govt. Exhibit 1). The officers watched as the vehicle started to veer from the northbound lane of Hinkle Street toward the 1421 E. Hendricks residence. (Tr. at 9-14). The vehicle crossed the double yellow line into the southbound lane without using a turn signal. (*Id.*) When the vehicle's headlights illuminated the officers, the driver saw the police. (Tr. at 24). Upon seeing the officers, the driver suddenly swerved to the right, back into the northbound lane of Hinkle Street, and accelerated past the 1421 Hendricks residence. (Tr. at 26-27).

Deputy Rightsell recognized the maroon vehicle as belonging to the Defendant, Cyleste Gabaldon. (Tr. at 24-25). Deputy Rightsell and Detective Northcutt knew that Defendant is a first cousin of Kaprice Gabaldon. (Tr. at 21-29). Deputy Rightsell observed three occupants in the vehicle and he saw the occupants duck down to avoid detection upon seeing the officers. (Tr. at 22-37). The police officers immediately followed the vehicle and initiated a traffic stop in front of a residence on Tilden Street, about two blocks distant from 1421 E. Hendricks Street. (Govt. Exhibit 5).

As they approached the vehicle, Detective Northcutt smelled burning marijuana. (Tr. at 45). Defendant was the driver of the vehicle with two passengers. (*Id.*) Kaprice Gabaldon was not in the vehicle. (Tr. at 25). Officers obtained a search warrant for the vehicle and found firearms and ammunition hidden in the vehicle. (Tr. at 45; Doc. 1).

### LEGAL STANDARDS AND CONCLUSIONS OF LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Generally, probable cause is required before an officer may conduct a search or a seizure. *See New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985). However, law enforcement officers may approach a person to investigate possible criminal behavior even if he lacks probable cause to arrest. *See Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Whitley*, 680 F.2d 1227, 1232 (10th Cir. 2012). Such "[a]n investigatory detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime." *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (quotations omitted).

"A law enforcement officer may initiate a traffic stop once he has reasonable suspicion that criminal activity is, has, or is about to occur." *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (holding that a vehicle stop is justified if the officer has reasonable suspicion that "criminal activity may be afoot."). Alternatively, an officer may stop a vehicle if he has either probable cause to believe a traffic violation occurred or reasonable, articulable suspicion that the driver committed a traffic violation. *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008). Reasonable suspicion

4

requires "considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011).

In determining whether reasonable suspicion justifies a vehicle stop, courts consider the totality of the circumstances, rather than assessing each factor or piece of evidence in isolation. *Arvizu*, 534 U.S. at 273; *McHugh*, 639 F.3d at 1256 (quotations omitted). Notably, "an officer need not rule out the possibility of innocent conduct; he or she simply must possess some minimal level of objective justification for making the stop." *Winder*, 557 F.3d at 1134 (quotations omitted). When determining whether reasonable suspicion justifies a vehicle stop, courts "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *McHugh*, 639 F.3d at 1256 (quotations omitted).

In this case, the family relationship between Defendant and Kaprice Gabaldon, a prime suspect in the shooting, is too close to ignore in the reasonable suspicion calculus. It bears underscoring that even general descriptions of suspects or vehicles may be considered as factors supporting reasonable suspicion. *See United States v. Sanchez*, 519 F.3d 1208, 1211, 1214-15 (10th Cir. 2008) (concluding a witness's tip that "a man wearing a gray shirt [struck] a woman at a nearby intersection" was a factor supporting reasonable suspicion). The officers had dealt with Defendant's family for years. They knew that she and Kaprice Gabaldon are first cousins. The officers were also familiar with Defendant's appearance and recognized her vehicle. This factor weighs heavily in favor of reasonable suspicion

Defendant's avoidance of the police further contributes to the reasonable suspicion calculus. An individual's "unprovoked flight upon noticing the police" and "nervous, evasive behavior" are relevant factors in determining reasonable suspicion for a brief investigatory stop." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also United States v. Johnson*, 364 F.3d 1185,

1192 (10th Cir. 2004) (explaining that nervousness is a pertinent factor that a reasonable law enforcement officer would analyze in investigating possible crimes). The fact that Defendant swerved and drove away when she saw the police weighs heavily in favor of reasonable suspicion. Indeed, the officers would have been remiss if they had not stopped the vehicle under these circumstances.

Defendant relies on *United States v. Neff*, 681 F.3d 1134 (10th Cir. 2012) in support of her contention that the stop was not justified by reasonable suspicion. In *Neff*, the Tenth Circuit held that a driver's decision to exit the interstate after seeing drug checkpoint signs may serve as a valid factor in an officer's analysis of reasonable suspicion for an investigatory stop, but standing alone, it is insufficient to justify even a brief investigatory detention of a vehicle. *Id*. at 1141-42. Notably, the only suspicious circumstance articulated in Neff was the driver's decision to exit the interstate after he saw the drug checkpoint signs. *Id.* No other suspicious circumstances existed in *Neff,* and the arresting officer did not observe the defendant commit a traffic violation. *Id.* Defendant's case contrasts sharply from *Neff* because in this case, there were multiple suspicious circumstances linking Defendant to criminal activity through Kaprice Gabaldon, and the officers observed Defendant commit traffic violations. As the facts of *Neff* are distinct from the facts at hand, *Neff* is not helpful to Defendant's cause.

The stop of Defendant's vehicle was clearly supported by specific, articulable facts that would generate suspicion in the mind of a reasonable officer. The factors supporting reasonable suspicion include: (1) police officers were investigating a shooting that occurred hours before, and they had identified Kaprice Gabaldon, Defendant's cousin, as a suspect; (2) police officers had secured warrants to search Kaprice Gabaldon's house and the nearby houses of the other two suspects; (3) police officers located a male suspect hiding in the backyard of one of the houses;

6

(4) police officers had not located Kaprice Gabaldon; (5) at 3:00 a.m., police officers observed Defendant drive her vehicle in excess of the speed limit, cross a double yellow line without signaling, and approach a house subject to a search warrant; (6) when she saw the police, Defendant took evasive action; (7) Officer Rightsell recognized Defendant's vehicle as belonging to Defendant; (8) Officer Rightsell and Detective Northcutt knew that Defendant is Kaprice Gabaldon's cousin; and (9) Officer Rightsell observed the occupants of the vehicle duck down as if trying to avoid detection.

Based on the totality of the circumstances, the officers had reasonable suspicion to believe that Kaprice Gabaldon was in the vehicle and that the occupants of the vehicle were involved in criminal activity. In addition, the stop was justified as a routine traffic stop as officers observed the driver speeding and crossing a double yellow line without using her turn signal. Here, the totality of the circumstances supported the officers' belief that Defendant was involved in criminal activity and had committed observed traffic offenses. Simply put, the stop was justified by reasonable suspicion.

**THEREFORE,**

**IT IS ORDERED** that Defendant Cyleste Gabaldon's Motion to Suppress (Doc. 19) is **DENIED**.

_____
  **ROBERT C. BRACK**
  **UNITED STATES DISTRICT JUDGE**